# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM VAN WINKLE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:11-cv-01017** |
| v. | ) | Judge ~~Wiseman~~ Nixon / Knowles |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17. Plaintiff has filed a Reply. Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on April 21, 2009,[1] alleging that he had been disabled since June 19, 1998, due to the amputation of his left leg above the knee and back problems. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 129-34, 144. Plaintiff's application was denied both initially (TR 64) and upon reconsideration (TR 65). Plaintiff subsequently requested (TR 78-80) and received (TR 36-62) a hearing. Plaintiff's hearing was conducted on December 7, 2010, by Administrative Law Judge ("ALJ") John R. Daughtry. TR 36. Plaintiff and Vocational Expert, Pedro Roman, appeared and testified. *Id.*

On December 30, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-19. Specifically, the ALJ made the following findings of fact:

> 1.  The claimant has not engaged in substantial gainful activity since April 20, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairment: history of left above the knee amputation (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) in that he can lift/carry ten pounds occasionally and less than ten pounds frequently, can stand/walk up to or about two hours in an eight-hour workday with normal breaks, and can sit for up to or about

---

[1] Plaintiff's protective filing date was one day earlier, on April 20, 2009.

six hours in an eight-hour workday with normal breaks. He can occasionally push/pull with his left lower (prosthetic leg) extremity, but can otherwise perform unlimited pushing/pulling. He can occasionally climb stairs/ramps, balance, kneel or crouch, but he cannot crawl nor climb ladders/ropes/scaffolds. He can frequently stoop, but should avoid workplace hazards such as unprotected heights and moving machinery.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on April 22, 1976 and was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2009, the date the application was filed (20 CFR 416.920(g)).

TR 12-16.

On January 13, 2011, Plaintiff timely filed a request for review of the hearing decision.

TR 122-28. On August 26, 2011, the Appeals Council issued a letter declining to review the

case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (citing *Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) failing to adequately evaluate and assess his credibility when the ALJ found that his subjective complaints of pain were not fully credible; 2) finding that he did not meet or medically equal Listing 1.05; 3) failing to consider all of his severe impairments, including his obesity, right knee swelling and pain with limited range of motion, and chronic low back pain; 4) failing to consider his indigency and drawing negative inferences from his lack of treatment; 5) failing to consider all of the evidence in determining Plaintiff's RFC; and 6) failing to "properly follow" the vocational expert's testimony. Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or

7

> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Subjective Complaints of Pain

Plaintiff contends that the ALJ did not appropriately evaluate his complaints of pain as required by SSR 96-7p. Docket No. 12-1 at 11-12. Plaintiff asserts that the ALJ dismissed his subjective complaints with a single, conclusory statement and that he erroneously based his credibility determination on the fact that Plaintiff could perform some activity on a very minimal basis. *Id.* Plaintiff also argues that the ALJ should have articulated the weight he accorded to Plaintiff's complaints, and the reasons therefor. *Id.* These points are reiterated in his Reply. Docket No. 18.

Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints of pain and was correct in finding that Plaintiff's statements concerning the intensity and persistence of his symptoms were not fully credible to the extent that he alleged. Docket No. 17 at 14-15. Defendant argues that Plaintiff's descriptions of his activities of daily living were inconsistent with the severity of the pain and limitations alleged, and further contends that much

8

of Plaintiff's own testimony, therefore, supports the ALJ's determination. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting S. Rep. No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 CFR 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled . . . . "); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain . . . do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 CFR 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary,* 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d

524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's medically determinable impairment

could reasonably be expected to cause some symptoms, however, Plaintiff's statements

concerning the intensity, persistence, and limiting effects of his symptoms were not credible to

the extent that he alleged. TR 15. In discussing Plaintiff's subjective complaints, the ALJ

stated:

> There is very little medical evidence in the record. Claimant says
> that he now suffers from low back pain and that he has visited the
> emergency room on occasion for pain medication. The evidence
> of record does not reveal significant emergency room treatment
> associated with back pain. In fact, there is no mention of back pain
> until shortly after claimant filed for Supplemental Security Income
> in July of 2009. In August of 2009, Claimant visited Northfield
> Outpatient clinic and reported that he was trying to get disability
> for his above the knee amputation. He reported, at that time, that
> he "had been told he had elevated blood pressure," and he
> complained of acid reflux. The assessment comment reads, "mild
> hypertension." Claimant was instructed to return to the clinic to
> recheck his blood pressure and was referred to orthopedics for his
> alleged hip and low back pain. There is no record of a return visit.
>
> The next medical record is from February 2010 at National Urgent
> Care. Claimant said he had disabling right knee pain and had
> found no relief. He reported no recent trauma or injury to explain
> new complaints of pain and declined the rheumatoid panel and
> imaging of the lumbar spine and right knee. The medical
> impression was chronic pain, fatigue, polydipsia, muscle spasm
> and low back pain. There was no explanation of etiology and no
> studies were ordered. In October claimant said he had all over
> body aches and intermittent right shoulder pain with raising his

10

hand over his head. He also reported that his pain (presumably low back) was worse after he had been up on concrete floors for two to four hours.

...

Claimant alleged in his application for benefits that he was sick all the time. There is no evidence in the record to support that allegation. Claimant has medical records from the Hope Clinic, but the only complaint supported by that record would be seasonal allergies or a case of the flu. Claimant's representative has directed attention to records from National Urgent Care that references reports of falling, swelling in his leg, abdominal pain, headaches, muscle tenderness and weakness, along with pain and depression. However, no doctor has suggested degenerative disc disease. No accident or trauma has been recorded since 1998. Stomach ache and headache from a single, or even from two visits to the doctor, both happening in the months preceding this hearing, and never reported before the claimant's application of benefits, do not provide a credible basis for a finding of physical limitations. The undersigned would not imply that claimant is without depression, but he takes no medication for his alleged depression and has apparently not availed himself of community resources for mental health treatment. All of these conditions are considered non-severe.

Claimant's application also supplies us with the information that he mows and weed eats his mother's yard in order to be permitted to live in the home. The tenor of that self report carries with it the suggestion that claimant would have no place to live if he did not perform these services for his mother, but he admits that he is able to do so. In that same form, he reports that he can walk 1000 feet and climb stairs, but only to a limited extent. It appears that claimant's own admissions agree with the assigned residual functional capacity, although it does not appear he intended the logical conclusion that follows.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that he has alleged for the reasons discussed herein.

11

TR 13-15 (internal citations omitted).

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. *Id.* The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ ultimately determined that Plaintiff's reported activities and the evidence of record were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

Moreover, the ALJ's credibility determination is supported by the opinion of State Agency examining physician Dr. Keown, and the opinions of State Agency reviewing physicians Drs. Gregory and Parrish. The ALJ discussed their opinions as follows:

> Claimant was examined by Dr. Donita Keown in June of 2009. Dr. Keown reported claimant's complaints of discomfort with his prosthesis that may need to be replaced or repaired. Dr. Keown opined that claimant could walk long enough to do sedentary work, specifically, she said "less than three hours." Dr. Keown noted that claimant's low back pain was most likely musculoskeletal rather than degenerative. However, she also opined that claimant could not do any lifting or carrying. That part of her assessment is confusing, as there have been no alleged impairments in claimant's upper body. Dr. Keown reported obesity, but no condition that would impair claimant's ability to lift, no cervical back problem, no arm, elbow, wrist or hand problems. Dr. Keown's opinion regarding lifting and carrying is also inconsistent with the

claimant's testimony that he could lift and carry 15 to 20 pounds.[3]

The State agency physician, Dr. James Gregory, reviewed the medical record and concluded that claimant had the ability to lift 20 pounds occasionally and ten pounds frequently. He agreed with Dr. Keown's assessment of claimant's ability to walk, stand and sit. Dr. Gregory opined, and the undersigned agrees, "there is no support for a lifting restriction other than the prosthetic leg. There is no abnormality of significance in the back, neck or bilateral upper extremities." Claimant testified during his hearing that he had problems lifting over 15-20 pounds. In his "function report", he admitted to the ability to lift 20-30 pounds. It appears that in the only conflict over medical opinion, the claimant agrees with the residual functional capacity assigned above. Dr. Gregory's opinion is therefore given significant weight as it is consistent with the record and supported by claimant's own testimony, to the extent that it allows for a range of sedentary work. As discussed hereinabove, viewing the case in a light most favorable to the claimant and extending the benefit of doubt, the claimant's residual functional capacity is further reduced to a range of sedentary work. Carolyn Parrish, MD, viewed the medical evidence and affirmed Dr. Gregory's opinion.

TR 14 (internal citations omitted)(footnote added). Thus, the ALJ considered and accepted the

opinions of Drs. Keown, Gregory, and Parrish opinions inasmuch as they were consistent with

Plaintiff's testimony and the overall evidence of record.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

---

[3] Plaintiff testified as follows:

ALJ - Okay. Well, with the exception of bending down to pick up an object on the left side, do you have any problems lifting and carrying objects?
A - Well, carrying - like if I've got something that's any weight at all, as far as walking with it I have trouble because -
ALJ - What's any weight at all?
A - Excuse me?
ALJ - What's any weight at all?
A - Probably anything over 15 or 20 pounds -
TR 51.

13

medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (citing *Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters,* 127 F.3d at 531 (citing *Bradley,* 682 F.2d at 1227; *cf King v. Heckler,* 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary,* 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky,* 35 F.3d at 1036), and the reasons must be supported by the record (*see King,* 742 F.2d at 975).

After assessing all of the medical and testimonial evidence of record, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that he alleged for the reasons discussed above. TR 13-15. As is clear from the ALJ's discussion, the ALJ did not accord significant weight to Plaintiff's subjective claims because they were inconsistent with, and unsupported by, the overall evidence of record, and his own reported activities of daily living. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

14

## 2. Meeting or Equaling a Listing

Plaintiff argues that he suffers from an impairment or a combination of impairments that meets or medically equals Listing 1.05. Docket No. 12-1 at 8-9. Specifically, Plaintiff argues that the objective and opinion evidence of record establishes that Plaintiff's leg amputation is medically equal to Listing 1.05. *Id.* Plaintiff also argues that the ALJ should have consulted a medical expert to determine medical equivalency. *Id.* Plaintiff reiterates these arguments in his Reply. Docket No. 18.

Defendant responds that Plaintiff has failed to establish that he is unable to use his prosthesis to ambulate effectively and has failed to demonstrate the requisite stump complications. Docket No. 17 at 10-12. Defendant also responds that, while the record indicates that Plaintiff's prosthetic device is in need of repair or replacement, there is no evidence to indicate that Plaintiff would be unable to use a properly fitted prosthetic. *Id.* Defendant additionally argues that, while records indicate that Plaintiff ambulated "with difficulty," he ambulated independently, and there is no allegation in the record that Plaintiff used or required a hand-held assistive device to ambulate. *Id.* Finally, Defendant argues that Plaintiff's own reported daily activities demonstrate his ability to ambulate effectively, as defined in the Listings. *Id.* Accordingly, Defendant contends that Plaintiff has failed to establish that his leg amputation meets or equals the Listings. *Id.*

With regard to Listings 1.00, "Musculoskeletal system," and 1.05, "Amputation (due to any cause)," the Code of Federal Regulations states:

> [1.00B2]b. *What we mean by inability to ambulate effectively*
>
> (1) *Definition.* Inability to ambulate effectively means an extreme

15

limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

. . .

1.05 *Amputation (due to any cause)*.

. . .

(B) One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months

20 CFR Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b) and 1.05(B). If Plaintiff's impairment meets or

medically equals the requisites of the Listings, then "benefits are owing without further inquiry."

Turning to the case at bar, the ALJ found that Plaintiff's left above the knee amputation

was, in fact, a severe impairment, but explained that it did not meet Listing 1.05 because he was

able to use a prosthetic device to ambulate, despite having "a lower extremity amputation above

the tarsal region." TR 12. Plaintiff correctly asserts that Dr. Keown observed a few stump

complications (Docket No. 12-1 at 8); however, Plaintiff fails to demonstrate that those stump

complications were severe enough to result "in [a] medical inability to use a prosthetic device to

ambulate effectively" as required by Listing 1.05(B). While Dr. Keown observed erythema[4] and

hyperpigmented areas at the inguinal regions, she did not observe any open lesions. TR 231. As

the ALJ noted, both Drs. Keown and Gregory opined that Plaintiff's ill-fitting and broken

prosthesis appeared to be the cause of his problems, and that, with that ill-fitting and broken

prosthesis, Plaintiff could walk less than three hours per day (enough to perform sedentary

work). TR 14, 231. Dr. Keown additionally noted that Plaintiff did not use any assistive devices

(crutches, canes, or walkers); and even though she observed that he ambulated with difficulty

and experienced instability when performing difficult range of motion movements, she did not

prescribe a cane or other assistive device. TR 229-32. These findings support the ALJ's

determination that Plaintiff could ambulate effectively with his prosthesis, and therefore, that

Plaintiff's amputation did not meet or medically equal the Listing requirements. TR 12.

     Also supportive of the ALJ's determination that Plaintiff could ambulate effectively with

his prosthesis and therefore did not meet or medically equal the Listing requirements, the ALJ

discussed, *inter alia*, Plaintiff's own reported daily activities, records from National Urgent Care,

and Plaintiff's June 1, 2009 Function Report - Adult. TR 13-14, 166-73, 248-59. Plaintiff

reported that he lived alone to National Urgent Care, and consistently reported on National

Urgent Care's patient questionnaires that he had "no problems" with independent daily living.

---

[4] "Erythema is a skin condition characterized by redness or rash." Steven D. Ehrlich,
*Erythema*, University of Maryland Medical Center (December 31, 2010),
http://www.umm.edu/altmed/articles/erythema-000154.htm.

TR 248, 254-55. Additionally, on Plaintiff's June 1, 2009 Function Report - Adult, Plaintiff

reported, *inter alia*, that he: mows the lawn and weed eats, although with some difficulty; goes

outside a few times a day either walking or riding in a car and does not need anyone to

accompany him; goes grocery shopping approximately once per month; can walk about 1000

feet before he needs to stop and rest, but cannot walk much more than that in a day; and reports

previously using assistive devices, which were not prescribed. TR 166-73. Plaintiff walked into

his hearing unassisted. TR 47.

An ALJ has the duty to review all of the medical and testimonial evidence relevant to a

claim. 20 CFR 404.1527(c) and 20 CFR 416.927(c). If the ALJ finds inconsistencies in the

record, he will weigh all of the evidence to determine whether, based upon that evidence,

disability within the meaning of the Act and Regulations exists. 20 CFR 404.1527(c)(2) and 20

CFR 416.927(c)(2). After reviewing the medical evidence in its entirety, as well as Plaintiff's

report and testimony, the ALJ concluded that Plaintiff failed to demonstrate that his amputation

satisfied the requisite criteria for Listing 1.05(B). TR 12. This determination was proper.

Plaintiff also argues that the ALJ erred in failing to consult a medical expert ("ME")

before concluding that his impairments did not meet or medically equal a Listing. Docket No.

12-1 at 9. The law is well-settled that an ALJ has the ultimate responsibility for ensuring that

every plaintiff receives a full and fair hearing. *Lashley v. Secretary*, 708 F.2d 1048, 1051 (6th Cir.

1983). The Regulations generally provide the ALJ with discretion in deciding whether to seek

testimony from an ME. 20 CFR 404.1527(f)(2)(iii) ("Administrative law judges may also ask for

and consider opinions from medical experts on the nature and severity of your impairment(s) and

on whether your impairment(s) equals the requirements of any impairment listed in appendix 1

to this subpart."). With regard to when an ALJ or the Appeals Council must obtain an opinion

from an ME, SSR 96-6p states:

> [A]n administrative law judge and the Appeals Council must
> obtain an updated medical opinion from a medical expert in the
> following circumstances:
>
> When no additional medical evidence is received, but in the
> opinion of the administrative law judge or the Appeals Council the
> symptoms, signs, and laboratory findings reported in the case
> record suggest that a judgment of equivalence may be reasonable;
>
> or
>
> When additional medical evidence is received that in the opinion
> of the administrative law judge or the Appeals Council may
> change the State agency medical or psychological consultant's
> finding that the impairment(s) is not equivalent in severity to any
> impairment in the Listing of Impairments.

1993 SSR LEXIS 3.

None of the circumstances presented in SSR 96-6p is present in the case at hand.

Accordingly, further testimony from a medical expert was not required. Plaintiff's argument on

this point fails.

### 3. Severity of Plaintiff's Impairments

Plaintiff argues that the ALJ erroneously failed to consider Plaintiff's other severe

impairments. Docket No. 12-1 at 9-10, 13. Specifically, Plaintiff contends that his right knee

swelling and pain with limited range of motion, chronic low back pain, and obesity are severe

impairments that should have been considered by the ALJ. *Id.* Plaintiff maintains that the ALJ

should have found them to be severe both singly and in combination because they have a "very

significant limiting effect upon [his] ability to engage in work activity at the SGA level." *Id.*

These arguments are reiterated in Plaintiff's Reply. Docket No. 18.

Defendant responds that Plaintiff bears the burden of proof at the first four steps of the sequential evaluation, but failed to carry his burden at step two, thereby failing to establish to that his impairments were severe. Docket No. 17 at 9-10. Defendant argues that the ALJ properly concluded that neither the medical evidence of record nor Plaintiff's own statements regarding his activities support the level of impairment that Plaintiff alleged. *Id.* Defendant contends that the ALJ, therefore, properly found that Plaintiff's other conditions, including "falling, swelling in his leg, abdominal pain, headaches, muscle tenderness and weakness, along with pain and depression" were non-severe. *Id.*

With regard to Plaintiff's argument that the ALJ failed to properly consider his right knee swelling and pain with limited ranged of motion, chronic low back pain, and obesity, the ALJ discussed the medical and testimonial evidence of record in detail, and ultimately determined that Plaintiff's physical impairments of right knee swelling, chronic low back pain, and obesity were not severe, either singly or in combination. TR 12-14. For example, the ALJ noted that when complaining of disabling right knee pain in February of 2010, Plaintiff "reported no recent trauma or injury to explain new complaints of pain and declined the rheumatoid panel and imaging of the lumbar spine and right knee." TR 13. Additionally, Dr. Keown noted that Plaintiff had joint enlargement of the right knee, with flexion of 150 degrees; crepitance on extension of right knee; and right patella sliding slightly laterally (TR 231), and Dr. Gregory noted that Plaintiff retained full range of motion of his hips and knees even with his enlarged knee and crepitance on extension (TR 240). As has been discussed above, the ALJ properly evaluated both of these opinions, and placed great weight on their overall assessments. TR 14. The ALJ's determination that Plaintiff's right knee swelling/pain was not severe was supported

20

by the medical records. This determination was proper.

Similarly, regarding Plaintiff's back pain, the ALJ noted that "there is no mention of back pain [in the record] until shortly after claimant filed for Supplemental Security Income in July of 2009." TR 13. In those records, Dr. Keown noted that Plaintiff had "chronic lower back pain [that] is likely musculoskeletal versus early degenerative change." TR 231. Despite this "likely musculoskeletal" back pain, Dr. Keown noted:

> Spinal Range of Motion: C-spine rotation left and right 80 degrees, flexion and extension 70 degrees. At the thoracolumbar column, dorsiflexion 80 degrees, lateral flexion left and right 20 degrees, extension to 15 degrees . . . I did not note any evidence of spasm in the muscle groups of the paralumbar spine. There is slightly reduced lordosis. SLRs negative.

*Id.*

Commenting on Plaintiff's back, Dr. Gregory noted:

> ROM of the lumbar spine is 80° flexion, 20° lateral and 15° extension. His attempts to do ROM are difficult due to the poor condition of the prosthesis. There is no evidence of spasms and there is a slight reduction in lordosis. SLR negative. . . . There is no abnormality of significance in the back, neck or BUE. . . .

TR 240.

As discussed above, the ALJ considered the findings of Drs. Keown and Gregory, and properly evaluated the medical and testimonial evidence of record as a whole. The ALJ's determination that Plaintiff's back pain was not severe was supported by the medical records. This determination was proper.

Regarding obesity, SSR 02-1p states in pertinent part:

> [O]besity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's

physical or mental ability to do basic work activities. . . .
Therefore, we will find that an impairment(s) is "not severe" only
if it is a slight abnormality (or a combination of slight
abnormalities) that has no more than a minimal effect on the
individual's ability to do basic work activities. . . .

There is no specific level of weight or BMI that equates
with a "severe" or a "not severe" impairment. Neither do
descriptive terms for levels of obesity (e.g., "severe," "extreme,"
or "morbid" obesity) establish whether obesity is or is not a
"severe" impairment for disability program purposes. Rather, we
will do an individualized assessment of the impact of obesity on an
individual's functioning when deciding whether the impairment is
severe. . . .

SSR 02-01p (Cum. Ed. 2002).

The Regulations require Plaintiff to prove the degree of functional loss resulting from his

obesity, as the claimant bears the burden through step four of the five-step sequential

evaluation.[5] *See id.* An ALJ should consider a claimant's obesity when the record reveals that

the claimant's obesity affects his/her functional capacity for work. SSR 02-1p; *See also*

*Cranfield v. Commissioner*, 79 Fed. Appx. 852, 857 (6th Cir. 2003).

In the case at bar, Plaintiff never alleged that any problems were caused by his weight in

his Disability Report or at his hearing. TR 144, 38-62. Plaintiff also failed to cite any evidence

in the record from any physician suggesting an aggravation of his symptoms as a result of his

weight, or suggesting that his weight had any limiting effect on his physical capabilities. Docket

No. 12-1 at 13. Plaintiff relies on Dr. Keown's diagnosis of obesity to demonstrate that his

obesity is a severe impairment. Docket No. 12-1 at 9.

The ALJ observed Plaintiff at his hearing (TR 36-62) and thoroughly considered Dr.

---

[5] The determination of Plaintiff's RFC occurs at step four.

Keown's opinion (TR 14, 229-32). Accordingly, the ALJ was aware of Plaintiff's obesity and obesity diagnosis. While Plaintiff is correct that Dr. Keown diagnosed him as obese, a diagnosis of obesity, without more, does not render obesity a severe impairment; as has been discussed, obesity as a severe impairment requires the claimant to demonstrate the requisite degree of functional loss resulting from his obesity. *See* SSR 02-1p. Plaintiff has failed to do so. The ALJ properly considered the medical evidence of record and Plaintiff's testimony in determining that Plaintiff's obesity is not a severe impairment. This determination was proper.

Plaintiff also argues that the ALJ erroneously minimized Plaintiff's low back pain simply because there was limited evidence of record. Docket No. 12-1 at 9. While the ALJ did note that there was limited medical evidence in the record, his articulated rationale demonstrates that he properly considered all of the medical and testimonial evidence, and did not simply base his determination on the fact that Plaintiff had not sought extensive treatment for his low back pain. The ALJ's determination is supported by the overall evidence of record for the reasons stated above. TR 13-15. Plaintiff has failed to show that his right knee swelling and pain, chronic low back pain, and obesity are severe impairments, either singly or in combination.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision was properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

## 4. Negative Inferences

Plaintiff contends that the ALJ failed to consider Plaintiff's indigency as the reason for

his lack of treatment, and erred by drawing negative inferences about his conditions due to said

lack of treatment.[6] Docket No. 12-1 at 7-8. Plaintiff maintains that is it uncontradicted that he

could not afford treatment, and the fact that he did not get regular, continuous treatment, or

objective diagnostic testing does not mean that he does not have severe disabling conditions. *Id.*

Rather, the reason for the lack of treatment and objective tests was the fact that Plaintiff did not

have health insurance or money to pay for medical treatment. *Id.* Plaintiff also argues that, in

citing his failure to seek treatment as an indication that he is not disabled, the ALJ drew

inappropriate negative inferences, failed to consider the record as a whole, and "simply invented

evidence" to support his conclusion. *Id.* Plaintiff reiterates these claims in his Reply. Docket

No. 18.

Defendant argues that Plaintiff's suggestion that because he was unable to afford medical

treatment, the ALJ should have accepted his subjective complaints as sufficient evidence of

severe impairments to satisfy his burden at step two is erroneous, because the ALJ properly

evaluated and discounted Plaintiff's credibility, and because the ALJ properly considered all the

---

[6] In support, Plaintiff relies on *Stennett v. Commissioner*, 476 F. Supp. 2d 665, 673 (E.D. Mich. 2007), which states:

> The adjudicator must not draw negative inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment . . . the individual may be unable to afford treatment and may not have access to free or low-cost medical services.

*Id.*

medical and testimonial evidence of record in making his credibility and disability determinations. Docket No. 17 at 9-10.

Plaintiff takes issue with the ALJ's statement, "There is very little medical evidence in the record" (TR 13), and extrapolates from that statement that the ALJ drew negative inferences from, and based his decision upon, that fact. To the contrary, there is nothing in the ALJ's decision to support Plaintiff's extrapolation. As has been discussed in the statements of error above, the ALJ thoroughly evaluated and discussed the medical evidence of record, made a reasoned decision, and determined that Plaintiff was not disabled based on the overall evidence of record. While the ALJ did note that "[t]here is very little medical evidence in the record" (TR 13), his articulated rationale demonstrates that he based his decision on his evaluation of the existing medical and testimonial evidence.

As quoted above, the ALJ discussed the relevant medical evidence, and lack thereof, as follows:

> There is very little medical evidence in the record. Claimant says that he now suffers from low back pain and that he has visited the emergency room on occasion for pain medication. The evidence of record does not reveal significant emergency room treatment associated with back pain. In fact, there is no mention of back pain until shortly after claimant filed for Supplemental Security Income in July of 2009. In August of 2009, Claimant visited Northfield Outpatient clinic and reported that he was trying to get disability for his above the knee amputation. He reported, at that time, that he "had been told he had elevated blood pressure," and he complained of acid reflux. The assessment comment reads, "mild hypertension." Claimant was instructed to return to the clinic to recheck his blood pressure and was referred to orthopedics for his alleged hip and low back pain. There is no record of a return visit.
>
> The next medical record is from February 2010 at National Urgent Care. Claimant said he had disabling right knee pain and had found no relief. He reported no recent trauma or injury to explain

25

new complaints of pain and declined the rheumatoid panel and imaging of the lumbar spine and right knee. The medical impression was chronic pain, fatigue, polydipsia, muscle spasm and low back pain. There was no explanation of etiology and no studies were ordered. In October claimant said he had all over body aches and intermittent right shoulder pain with raising his hand over his head. He also reported that his pain (presumably low back) was worse after he had been up on concrete floors for two to four hours.

. . .

Claimant alleged in his application for benefits that he was sick all the time. There is no evidence in the record to support that allegation. Claimant has medical records from the Hope Clinic, but the only complaint supported by that record would be seasonal allergies or a case of the flu. Claimant's representative has directed attention to records from National Urgent Care that references reports of falling, swelling in his leg, abdominal pain, headaches, muscle tenderness and weakness, along with pain and depression. However, no doctor has suggested degenerative disc disease. No accident or trauma has been recorded since 1998. Stomach ache and headache from a single, or even from two visits to the doctor, both happening in the months preceding this hearing, and never reported before the claimant's application of benefits, do not provide a credible basis for a finding of physical limitations. The undersigned would not imply that claimant is without depression, but he takes no medication for his alleged depression and has apparently not availed himself of community resources for mental health treatment. All of these conditions are considered non-severe.

Claimant's application also supplies us with the information that he mows and weed eats his mother's yard in order to be permitted to live in the home. The tenor of that self report carries with it the suggestion that claimant would have no place to live if he did not perform these services for his mother, but he admits that he is able to do so. In that same form, he reports that he can walk 1000 feet and climb stairs, but only to a limited extent. It appears that claimant's own admissions agree with the assigned residual functional capacity, although it does not appear he intended the logical conclusion that follows.

TR 13-15.

Each of these statements reports facts regarding medical or testimonial evidence, or the lack thereof. None of these statements is an improper inference or conclusion based on Plaintiff's lack of treatment.

The ALJ properly evaluated all of the evidence within the record as well as Plaintiff's testimony in his disability determination, as discussed in detail above. It is clear from the ALJ's detailed articulated rationale that he based his determination on the evidence of record, not on Plaintiff's lack of continuous treatment or objective diagnostic testing. Substantial evidence in the record supports the ALJ's determination that Plaintiff is not disabled; therefore, Plaintiff's claim fails.

## 5. Residual Functional Capacity

Plaintiff maintains that the ALJ failed to consider all the probative evidence of record in making his RFC determination. Docket No. 12-1 at 13-15. Specifically, Plaintiff argues that the ALJ failed to give any consideration to the Supplemental Pain Questionnaire, dated September 1, 2009 and to the Disability Report-Adult. *Id.* Plaintiff also argues that the ALJ's "rejection" of Dr. Keown's opined lifting and carrying restrictions was not supported by the weight of the treatment evidence or by Plaintiff's testimony. *Id.* Plaintiff contends that the ALJ "only considered the limited parts of the evidence that supported a finding of not disabled"; and that the ALJ "merely gives consideration to the evidence that supported his conclusion of not disabled and he mistakenly overlooked the evidence that fully established that [Plaintiff] was disabled." *Id.* Plaintiff further argues that because the ALJ determined that Plaintiff could stand/walk *up to* two hours in an eight hour workday and sit *up to or about* six hours in an eight hour workday, that this should be interpreted to mean that Plaintiff's RFC could be less than the

27

total eight hours required for sedentary work. *Id.* Plaintiff reiterates his argument in his Reply. Docket No. 18.

Defendant responds that the ALJ properly evaluated all of the evidence in determining Plaintiff's RFC, and that the medical evidence of record does not support the level of limitation that Plaintiff suggests. Docket No. 17 at 12-14.

With regard to Plaintiff's RFC, the ALJ ultimately determined that Plaintiff retained the RFC to perform sedentary work. TR 12. Specifically, the ALJ found that Plaintiff could lift/carry ten pounds occasionally and less than ten pounds frequently, could stand/walk up to or about two hours in an eight-hour workday with normal breaks, and could sit for up to or about six hours in an eight-hour workday with normal breaks. *Id.* The ALJ also discussed Plaintiff's nonexertional limitations, stating:

> He can occasionally push/pull with his left lower (prosthetic leg) extremity, but can otherwise perform unlimited pushing/pulling. He can occasionally climb stairs/ramps, balance, kneel or crouch, but he cannot crawl nor climb ladders/ropes/scaffolds. He can frequently stoop, but should avoid workplace hazards such as unprotected heights and moving machinery.

*Id.*

The ALJ additionally explained that in making his RFC determination, he did not find support to accord Plaintiff's alleged limitations full credibility, as discussed above. *Id.*

Plaintiff essentially contends that the ALJ must not have considered his answers in the Supplemental Pain Questionnaire and Disability Report-Adult, because those answers demonstrate that Plaintiff was as limited as he alleged. Docket No. 12-1 at 13-15. As has been discussed, however, the ALJ did not find Plaintiff to be fully credible. Accordingly, the ALJ was not bound to accept Plaintiff's self-reported answers to the questions posed in the

28

Supplemental Pain Questionnaire and Disability Report-Adult.

Plaintiff also takes issue with the ALJ's discounting Dr. Keown's opined lifting and

carrying restrictions, stating:

> The claimant's testimony was not in conflict with the findings
> made by Dr. Keown and his responses to the questions posed to
> him on the SSA Forms are consistent with his testimony and the
> assessment made by Dr. Keown. Additionally, the assessment
> made by Dr. Keown is fully supported and confirmed by the
> treatment records in evidence.

Docket No. 12-1 at 15.

The ALJ in the case at bar found that Dr. Keown's opinion was generally consistent with

the overall evidence. TR 14. Accordingly, he did not "reject" Dr. Keown's opinion, but rather,

discounted only her lifting and carrying assessment because he found that assessment to be

inconsistent with the overall evidence of record, including with Plaintiff's reported activities. *Id.*

Significantly, when considering the overall evidence of record, the ALJ gave Plaintiff the benefit

of some degree of limitation and actually *reduced* Dr. Keown's assessed RFC. *Compare* TR 232

("Mr. Van Winkle can be expected to sit 6 to 8 hours in an 8-hour workday, walk or stand less

than 3 hours in an 8-hour workday") *with* TR 12 ("[C]an stand/walk up to or about two hours in

an eight-hour workday with normal breaks, and can sit for up to or about six hours in an eight-

hour workday with normal breaks.").

Plaintiff additionally argues that the ALJ's RFC finding could be interpreted to mean that

Plaintiff cannot work the eight hours required for sedentary work. Docket No. 12-1 at 15. As

will be discussed in greater detail below, the ALJ's hypothetical questions posed to the VE

properly included the restrictions contained in the ALJ's ultimate RFC determination. TR 58-60.

Specifically, the ALJ's hypotheticals included that Plaintiff could only "sit for up to or about six

hours in an eight hour work day with normal breaks" (TR 58) and could stand/walk "2 hours in an eight hour work period with normal breaks" (TR 59). In response to the hypothetical questions, the VE identified jobs that Plaintiff could perform with the ALJ's determined RFC. TR 58-60.

The ALJ, after evaluating all of the objective medical evidence of record, Plaintiff's reported level of activity, and the VE's answers to the properly posed hypothetical questions, determined that Plaintiff retained the residual functional capacity to perform sedentary work. TR 12-15. The ALJ properly evaluated the evidence in reaching this residual functional capacity determination for the reasons discussed above, and the Regulations do not require more.

## 6. Vocational Expert Testimony

Plaintiff argues that the ALJ erroneously "rejected" the VE's opinion that Plaintiff would not be able to work given the severity of his pain and prosthetic issues if his testimony was found credible.[7] Docket No. 12-1 at 10. Plaintiff reiterates this claim in his Reply. Docket No. 18.

Defendant argues that the ALJ appropriately relied upon the VE's testimony in response to hypothetical questions that accurately represented Plaintiff's determined limitations. Docket No. 17 at 17-18. Defendant maintains that the ALJ was not required to incorporate alleged limitations that he ultimately did not find to be credible, nor was he required to accept the VE's answer to any hypothetical that so contained. *Id.*

---

[7] At the hearing, Plaintiff's counsel asked the VE the following question, "Mr. Roman, if his honor finds the claimant's testimony today to be fully credible, he's restricted to the full extent of that testimony, what impact would that have [on] the jobs you described today?" TR 60. The VE answered, "Well, if the honorable judge finds the testimony credible I believe that based on what he indicated, there would be a substantial, if not complete erosion of the occupational base." *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In the presence of nonexertional limitations that would preclude the application of the grid regulations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978))

In the case at bar, the ALJ's hypothetical questions posed to VE, Pedro M. Roman, incorporated Plaintiff's nonexertional limitations, as well as Plaintiff's age, education, work experience, residual functional capacity for sedentary work, and postural limitations. *See* TR 56-61. Specifically, the ALJ posed the following hypotheticals to the VE:

> Q    . . . Please assume an individual of the claimant's age, a younger individual with a high school education by virtue of the GED and past work as identified. Assume that this individual can lift and carry up to 20 pounds on an

occasional basis, up to 10 pounds on a frequent basis. Can stand and/or walk for up to or about six hours in an eight hour work day with normal breaks, can sit for up to or about six hours in an eight hour work day with normal breaks. Can engage in unlimited pushing and pulling, can occasionally climb stairs and ramps, balance, kneel and crouch. Should not climb ladders, ropes or scaffolds and should not crawl. Can frequently stoop, should avoid workplace hazards such as unprotected heights or moving machinery. The past work is ruled out. Could the hypothetical individual perform other work?

A    I believe so, your honor.

Q    Please identify.

A    Based on you[r] hypothetical, I believe so.

Q    Let me correct that. I said unlimited pushing and pulling, only occasional pushing and pulling involving that left lower extremity, otherwise it's unlimited.

A    Okay.

Q    Okay?

A    I believe that base on your hypothetical, we can identify assembler, small products. 739.687-030. Light, SVP of 2, numbers in the national [sic] economy – we have 7,027. Numbers in the national economy we have 216,533. Furthermore, under your hypothetical, I believe that such an individual could work as a cashier too. 211.462-010, light, SVP of 2. Numbers in the local economy, 22,014. Numbers in the national economy is 1,960,681. Furthermore, under you[r] hypothetical, I believe that such an individual could work as a finisher. 789-687-050. Light, SVP of 2. Numbers in the local economy, 3,143. Numbers in the national economy, 124,889.

Q    Okay – and for clarification, I referred to the left lower extremity, that is a prosthetic left lower extremity, you understood that?

A    That's correct.

| Q | Okay. Reduction in lifting and carrying to 10 pounds on an occasional basis, less than 10 pounds on a frequent basis. Also a reduction to – in standing and walking to 2 hours in an eight hour work period with normal breaks. The remainder of the hypothetical is intact, do I need to repeat that? |
|---|---|
| A | No, your honor. |
| Q | Okay. Are there jobs that such a hypothetical individual could perform? |
| A | I believe that there's sedentary jobs at that level. We - assembler, 734.687-018. Sedentary, SVP of 2. Numbers in the local economy, 902. Numbers in the national economy, 27,802. Furthermore, I believe that under your hypothetical . . . [w]e have charge account clerk, 238.367-038. Sedentary, SVP of 2. Numbers in the local economy, 2 -- 690. Numbers in the national economy, 32,253. Furthermore, I believe that such an individual could work as a telephone quotation clerk, which is identified under 237.267-046. Sedentary, SVP of 2. Numbers in the local economy, 1,361. Numbers in the national economy, 82,759. |

TR 57-60.

As can be seen, the ALJ's hypothetical questions accurately represented Plaintiff's

limitations, both exertional and nonexertional, that the ALJ accepted as credible. Because the

ALJ's hypothetical questions accurately represented Plaintiff's limitations, the ALJ properly

relied on the VE's answers to those questions to prove the existence of a significant number of

jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027,

1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*,

820 F.2d at 779.

Despite Plaintiff's arguments, the ALJ was not bound to accept the VE's answer to the

33

hypothetical question posed by Plaintiff's counsel,[8] because that hypothetical question was premised upon the ALJ's according Plaintiff's testimony full credibility, which, as has been discussed above, the ALJ did not do. Because the ALJ discounted Plaintiff's credibility, the hypothetical question posed by Plaintiff's counsel to the VE did not accurately represent the limitations found credible, and the VE's answer thereto was properly disregarded. Accordingly, Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

---

[8] Quoted *supra,* on p. 30.

34